UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:20-cr-00067-JAW-1 |
| | ) | |
| WILLIAM A. BISCHOFF | ) | |

**ORDER ON MOTION TO MODIFY CONDITIONS
OF SUPERVISED RELEASE**

A man on federal supervised release, who orchestrated a multi-million-dollar investment fraud scheme, moves to terminate location monitoring and home confinement following his release from incarceration under 18 U.S.C. § 3582(c)(1)(A). The Court dismisses the motion without prejudice because the supervisee has not shown that exceptional circumstances justify modifying the terms of his supervised release and because a modification would fail to reflect the seriousness of the offense, promote respect for the law, provide just punishment, or protect the public.

## I.    PROCEDURAL BACKGROUND

### A.    William Bischoff's Conviction, Sentence, and Release from Incarceration

On December 27, 2017, federal prosecutors in the District of New Hampshire filed a two-count information charging William A. Bischoff with one count of Wire Fraud in violation of 18 U.S.C. § 1343 and one count of Willfully Failing to File Individual Federal Income Tax Returns in violation of 26 U.S.C. § 7203. *United States v. William A. Bischoff*, No. 1:17-cr-00196-JD (D.N.H.), *Criminal Information* (ECF No. 1). The charges alleged Mr. Bischoff defrauded clients of his investment

advisory business and obtained money and property through materially false pretenses, representations, and promises. *Id.* at 2-3.

The fraud scheme was simple. Mr. Bischoff solicited clients to pay him money that he promised to invest on their behalf. *Id.* In many cases, he promised returns that "far-exceeded market norms." *Id.* But, according to the information, Mr. Bischoff failed to make good on his promises and instead used significant amounts of his clients' money "to pay personal expenses, engage in personal financial investments, repay other investors from whom he had previously diverted funds and to make other payments wholly unrelated to the business enterprises and financial investments for which [he] promised he would use the funds." *Id.*

On March 9, 2018, Mr. Bischoff waived indictment and pleaded guilty to the information. *United States v. Bischoff*, No. 1:17-cr-00196-JD (D.N.H.), *Waiver of Indictment* (ECF No. 8). On June 20, 2018, Mr. Bischoff appeared for sentencing before United States District Judge Joseph A. DiClerico. *Id.*, *Min. Entry* (June 20, 2018). Judge DiClerico sentenced Mr. Bischoff to forty-eight months imprisonment on count one, and twelve months imprisonment on count two, to be served concurrently. *Id.*, *J.* at 2 (ECF No. 18). Mr. Bischoff was also sentenced to three years of supervised release on count one, and one year on count two, to run concurrently. *Id.* at 3. There was a special assessment of $125 and Judge DiClerico ordered Mr. Bischoff to pay $5,647,446.31 in restitution on count one and $568,845 in restitution on count two. *Id.* at 6-8.

On April 20, 2020, Mr. Bischoff moved for release to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A), claiming "extraordinary and compelling reasons" justified his release from incarceration. *Id. , Mot. for Emergency Immediate Release to Home Confinement* (ECF No. 62). Mr. Bischoff asserted he was particularly susceptible to death or serious illness from COVID-19 because he was seventy-nine years old and a cancer survivor. *Id.* On April 29, 2020, the Government objected. *Id., United States' Obj. to Mot. for Emergency Immediate Release to Home Confinement / Compassionate Release 3582(C)(1)(A)(i)* (ECF No. 66). On May 5, 2020, Judge DiClerico dismissed without prejudice Mr. Bischoff's motion for compassionate release after concluding he failed to comply with the compassionate release statute's mandatory exhaustion requirement without reaching the merits of Mr. Bischoff's motion. *Id., Order* (ECF No. 68).

On May 7, 2020, Mr. Bischoff filed a motion for reconsideration, arguing Judge DiClerico had misinterpreted the exhaustion requirement, and requested a new order addressing the merits of his motion for compassionate release. *Id., Mot. to Reconsider Order Denying Def.'s Mot. for Compassionate Release* (ECF No. 69). Mr. Bischoff indicated the Government did not object to the Court's consideration of his motion for compassionate release on the merits. *Id.* at 1. Judge DiClerico granted the motion for reconsideration the next day after rejecting Mr. Bischoff's interpretation of § 3582(c)(1)(A) but finding the Government's acquiescence waived the exhaustion requirement. *Id., Order* (ECF No. 70).

On May 19, 2020, Judge DiClerico granted Mr. Bischoff's motion for compassionate release, after updated briefing. *Id.*, *Order* (ECF No. 77). Judge DiClerico amended Mr. Bischoff's sentence, and reduced the incarcerative portion of the sentence to time served. *Id.*, *Am. Sentence* at 1 (ECF No. 78). He further ordered that Mr. Bischoff be placed on a special term of supervised release until December 14, 2021, which is equivalent to what Mr. Bischoff's release date would have been from the Bureau of Prisons. *Id.* Following this special term of supervised release, Mr. Bischoff will begin his original three-year term of supervised release. *Id.*

During the special term of supervised release, Judge DiClerico specifically restricted Mr. Bischoff "to his residence at all times until December 14, 2021, except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer." *Id.* at 3. Furthermore, Mr. Bischoff was required to abide by location monitoring during the first ninety days of his supervised release, "after which [Mr. Bischoff] will continue to be monitored using the location monitoring technology at the discretion of the probation officer." *Id.*

### B.      William Bischoff's Supervised Release in Maine

On September 29, 2020, Judge DiClerico ordered jurisdiction over Mr. Bischoff's supervised release be transferred to the District of Maine effective upon this Court's acceptance of jurisdiction. *Transfer of Jurisdiction* at 1 (ECF No. 1). On September 30, 2020, this Court accepted jurisdiction. *Id.* On March 3, 2021, Mr. Bischoff moved pro se to modify the conditions of his home confinement and requested

4

the Court issue an order instructing the United States Probation Office for the District of Maine (USPO) to cease location monitoring. *Mot. to Amend Special Condition of Supervision* (ECF No. 2) (*Def.'s Mot.*). On March 19, 2021, the Government responded in opposition. *Gov't's Resp. in Opp'n to Def.'s Mot. to Modify Conditions of Supervised Release* (ECF No. 3) (*Gov't's Opp'n*).

On April 8, 2021, the Court issued an order indicating Mr. Bischoff's probation officer had submitted two confidential responses to the Court concerning Mr. Bischoff's motion to terminate location monitoring. *Order* (ECF No. 4). The Court ordered that the confidential responses be placed on the docket and ordered Mr. Bischoff and the Government to respond within seven days of the date the responses are docketed to inform the Court whether they wish to file supplemental memoranda in light of the responses. *Id.* The Clerk's Office placed both confidential responses on the docket later that day. *Resp. to Req. to Modify Conditions of Supervision* (ECF No. 5) (*First Probation Mem.*); *Suppl. Resp. to Req. to Modify Conditions of Supervision* (ECF No. 6) (*Second Probation Mem.*).

On April 13, 2021, Mr. Bischoff called the Clerk's Office and indicated he intended to file a supplemental memorandum, and the Court ordered that he file such memorandum by April 23, 2021. *Order* (ECF No. 7). That same day, the Government filed its supplemental response. *Gov't's Suppl. Resp. in Opp'n to Def.'s Mot. to Modify Conditions of Supervised Release* (ECF No. 8) (*Gov't's Suppl. Opp'n*). On April 15, 2021, Mr. Bischoff filed his supplemental memorandum. *Suppl. Mem. – Mot. to Modify Conditions of Release* (ECF No. 9) (*Def.'s First Suppl. Mem.*). On

April 22, 2021, Mr. Bischoff filed a response to the Government's supplemental opposition. *Suppl. Mem. – Mot. to Modify Conditions of Release* (ECF No. 10) (*Def.'s Second Suppl. Mem.*).

## II.    THE PARTIES' POSITIONS

### A.    William Bischoff's Motion

Mr. Bischoff requests that the Court terminate his location monitoring and home confinement. *Def.'s Mot.* at 1.  He notes the special condition of his home confinement and supervised release stated that the USPO shall use location monitoring during the first ninety days of his home confinement, and then as needed at the discretion of his supervising probation officer. *Id.*  Mr. Bischoff claims that although the Maine USPO does not object to terminating location monitoring,  it has a policy of using location monitoring for all individuals serving a term of home confinement and will not deviate from this policy without a court order. *Id.* at 2.  He notes that he has been on location monitoring for two hundred seventy days, rather than ninety, and has been compliant with his supervision. *Id.*  Thus, he requests a court order striking the special condition requiring location monitoring and "the home confinement conditions of supervised release." *Id.*

### B.    The Government's Opposition

The Government objects to Mr. Bischoff's request to terminate location monitoring because the conditions are "reasonable, supported, and not unusual." *Gov't's Opp'n* at 3.  It notes that "[a]n extended period of home confinement following the granting of a compassionate release motion often serves to promote respect for

the law and protect the public." *Id.* Thus, "[t]he Government submits that the conditions should remain." *Id.*

### C.     The USPO's First Memorandum

In its first memorandum to the Court, the USPO represents that Mr. Bischoff "scores Low Risk on the Post-Conviction Risk Assessment tool" and similarly situated offenders "have a re-arrest rate of 3% and a revocation rate of less than 1%." *First Probation Mem.* at 1. The USPO further notes Mr. Bischoff has fully complied with the terms of his supervision and "would be an ideal candidate for our Low Intensity Supervision program if not for the officer-specific responsibilities of the [Location Monitoring] Program." *Id.*

The USPO "offers no objection to the removal of the home confinement condition." *Id.* at 2. It submits "the condition does not serve to mitigate any risk in this case" because Mr. Bischoff is an eighty-year-old white-collar offender. *Id.* The USPO informs the Court that Mr. Bischoff's only other conviction is a 1963 conviction of furnishing alcohol to a minor when Mr. Bischoff was twenty-two. *Id.* Thus, the USPO concludes Mr. Bischoff "is not a risk of physical harm to anyone" and that monitoring his movements "appears to be a gratuitous requirement, especially given the Probation Office resources applied to manage it." *Id.* The USPO observes that Mr. Bischoff has "significant restitution to repay" and should be encouraged to work outside the home to pay off his restitution. *Id.* It assures the Court that the USPO will expeditiously cease location monitoring if the Court grants Mr. Bischoff's motion but will continue monitoring Mr. Bischoff's location if the motion is denied. *Id.*

### D.    The USPO's Second Memorandum

The USPO's second memorandum painted Mr. Bischoff in a different light. *Second Probation Mem.* at 1.  There, the USPO stated the terms of Mr. Bischoff's Location Monitoring Agreement require that he submit his leave schedule to the Probation Office with advance notice.  *Id.*  The USPO further indicated Mr. Bischoff has been compliant in submitting his leave schedule along with documentation to verify his activities.  *Id.*  However, the USPO noted that it had spoken to Mr. Bischoff "on multiple occasions about the length of time he was requesting for specific activities and as a result, restrictions have been tightened."  *Id.*

The trouble started on April 3, 2021, when probation officers spoke with Mr. Bischoff about his requested leave schedule and supporting documents.  *Id.* Mr. Bischoff admitted he had failed to comply with the Location Monitoring Agreement and had been "cushioning" his time out and "participated in activities he did not have prior approval for" without providing proper documentation to the USPO.  *Id.*  As a result, the USPO "respectfully recommends the home confinement special condition remain in effect."  *Id.*  However, the USPO noted it was open to revisiting the issue in the future.  *Id.*

### E.    The Government's Supplemental Opposition

In its supplemental opposition, the Government contends the Court should deny Mr. Bischoff's motion.  *Gov't's Suppl. Opp'n* at 1.  In light of the USPO's filings, the Government urges that Mr. Bischoff's "sole claim in favor of removing the home confinement condition--that he has been compliant with his supervision since his

release from incarceration--is false." *Id.* Thus, the Government requests that the Court deny Mr. Bischoff's motion. *Id.* at 2.

#### F.      William Bischoff's First Supplemental Memorandum

In response to the USPO's filings, Mr. Bischoff extends "his deep regret and apology to the Court for causing Probation to submit a secondary letter of opposition to [his] Motion." *Def.'s First Suppl. Mem.* at 1. He states he has "been very diligent and respectful of boundaries and rules" since beginning his supervised release. *Id.* Mr. Bischoff explains that on April 2, 2021, Probation Officer Justine Graves spoke to him about the length of time he needed for shopping. *Id.* He admits that he "never needed all the time and was home well before the deadline." *Id.* He further admits that sometimes he would "stop for coffee, run an errand for [his] daughter or take a slow ride home to enjoy the ride." *Id.* Mr. Bischoff concedes "[t]hese activities were not listed on [his] schedule . . .." *Id.* He claims to "offer no excuses" and states he has "extended [his] regrets to Probation . . .." *Id.*

In closing, Mr. Bischoff states he has "a significant restitution obligation" and informs the Court that he was able to "complete a transaction on Vermont property that could, if [it] closes, return several hundred thousand dollars to certain victims." *Id.* He also states that two financial groups have requested that he represent them, which will require more activity and travel, and asserts that he has a 34% interest in an entity that could repay more victims if liquidated. *Id.* Mr. Bischoff states his "desire and goals are to do the very best [he] can and hope and pray for some

9

redemption, peace and security." *Id.* He concludes that the "sooner [he] can commit to full time activity there are better chances for more significant restitution." *Id.*

### G.      William Bischoff's Second Supplemental Memorandum

Dated April 18, 2021, Mr. Bischoff's second supplemental memorandum contends that the USPO and the Government's filings are not "an accurate portrayal of [his] behavior and dedication over the past 11 months while under home confinement." *Def.'s Second Suppl. Mem.* at 1. Rather than submit documentation and statements of support, Mr. Bischoff lists a number of individuals he believes "can attest to [his] efforts and compliance." *Id.* These individuals include: (1) his daughter; (2) his supervisor at the Stage Neck Inn in York, Maine where he worked last summer and will work again starting on May 1, 2021; (3) two employees of Goodwill of Maine who are assisting him with his reentry to society; (4) a "retired Maine criminal defense attorney and long-time friend;" and (5) the town manager of Fair Haven, Vermont. *Id.*

In closing, Mr. Bischoff repeats his claim that his "past experience and continued support currently offer opportunities for [him] to create more significant revenues" and pay off his restitution. *Id.* He argues that he has "shown respect and cooperation through investigation, plea agreement and incarceration." *Id.*

## III.    LEGAL STANDARD

Under 18 U.S.C. § 3583, a court may "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release . . .." 18 U.S.C. § 3583(e)(2). However, the statute states that

the court should consider a set of factors under 18 U.S.C. § 3553(a) in making this decision and the court must act "pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." *Id.*

"The showing required for a defendant to obtain a modification of a condition of supervised release pursuant to section 3583(e) is an open question in [the First Circuit]." *United States v. Garrasteguy,* 559 F.3d 34, 43 n.12 (1st Cir. 2009). The unanswered question is whether, in modifying or terminating supervised release, the trial court acts within its discretion or whether a defendant must demonstrate changed or extraordinary circumstances. *Compare United States v. Kay*, 283 F. App'x 944, 946 (3d Cir. 2008) (unpublished) (reviewing district court's modification of supervised release for abuse of discretion and leaving open the question of whether a "significantly changed or extraordinary circumstances" standard is controlling in its modification determination), *with United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997) ("Section 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release following its initial imposition of a supervised release term in order to account for new or unforeseen circumstances").

Rather than attempt to resolve this uncertain legal issue, the Court will analyze Mr. Bischoff's motion to terminate location monitoring under both standards. *See United States v. Swain*, No. 1:11-cr-00015-JAW, 2021 U.S. Dist. LEXIS 77113,

at *8-10 (D. Me. Apr. 22, 2021); *United States v. Caparotta*, No. 1:06-cr-00058-JAW,

2016 U.S. Dist. LEXIS 80925, at *4-6 (D. Me. Jun. 22, 2016).

## IV.    DISCUSSION

Assuming the higher standard applies in the First Circuit, Mr. Bischoff has

not shown any significantly changed or extraordinary circumstances that justify

lifting the home confinement and location monitoring conditions.

The record from the United States District Court in New Hampshire confirms

that on June 20, 2018, Judge DiClerico imposed a sentence of forty-eight months of

incarceration and three years of supervised release. *United States v. Bischoff*, No.

1:17-cr-00196-JD (D.N.H.), *J.* (ECF No. 18).   Judge DiClerico allowed Mr. Bischoff to

self-report to federal prison on July 20, 2018. *Id., J.* at 2.  On July 20, 2018, Judge

DiClerico denied a motion to extend the self-surrender. *Id., Endorsed Order* (Jul. 20,

2018).

On May 19, 2020, Judge DiClerico granted Mr. Bischoff's motion for immediate

compassionate release and amended Mr. Bischoff's sentence from forty-eight months

to time served. *Id., Order* (ECF No. 77); *Am. Sentence* (ECF No. 78).  In his release

order, Judge DiClerico, however, made it plain that he considered the period from

May 19, 2020 to December 14, 2021, when Mr. Bischoff would have been released

from BOP custody as a "special term of supervised release." *Am. Sentence* at 1.  After

this "special term" expired, Judge DiClerico placed Mr. Bischoff on three years of

supervised release as he originally provided following the expiration of Mr. Bischoff's

incarcerative sentence. *Id.*

During this special period of supervised release, Judge DiClerico imposed significant restrictions on Mr. Bischoff:

> The defendant is restricted to his residence at all times until December 14, 2021, except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer.

*Id.* at 3.  From this language, this Court infers that even though Judge DiClerico granted Mr. Bischoff compassionate release, he viewed the period until December 14, 2021 as a compassionate substitute for the original incarcerative sentence.

In keeping with this view of the compassionate release order, Judge DiClerico expressly provided that during the first ninety days, Mr. Bischoff would be monitored by location monitoring.  *Id.*  However, Judge DiClerico did not order that this location monitoring should terminate automatically.  *Id.*  He specifically vested that authority in Mr. Bischoff's supervising probation officer, leaving it to the USPO's discretion to assess whether continued monitoring is appropriate.  *Id.*

Here, after initially supporting Mr. Bischoff's request to cease location monitoring, the supervising officer opposes early termination because Mr. Bischoff admitted he had not been compliant with the provisions.  *Second Probation Mem.* at 1.  As such, the Court finds Mr. Bischoff is currently serving his sentence as the sentencing judge intended and presented no changed or exceptional circumstances justifying early termination of location monitoring or home confinement.

The Court also finds Mr. Bischoff's alleged need to work outside the home an unpersuasive reason to end his location monitoring and home detention for three

13

reasons. First, it is not a changed or exceptional condition. To the extent that the terms of his supervised release impair his ability to make restitution, Judge DiClerico presumably considered that when he placed Mr. Bischoff in home confinement under location monitoring. These circumstances have not changed since Mr. Bischoff began supervised release and Mr. Bischoff's ability to work is just as limited now as it was then.

The second point is the conditions of Mr. Bischoff's special term of supervised release expressly permit him to work outside the home. *Id.*, *Am. Sentence* at 3 ("The defendant is restricted to his residence at all times until December 14, 2021, except for employment . . ."). As such, the Court is unsure why Mr. Bischoff claims he needs home confinement and location monitoring to end so that he can earn income to make restitution.

Third, the COVID-19 pandemic has led many employers to adopt flexible work-from-home arrangements, particularly in white-collar professions. These developments make the Court skeptical of Mr. Bischoff's statement that he needs location monitoring and home confinement to end so he can to reenter the financial services sector.

Additionally, Mr. Bischoff would have a significant burden demonstrating that he is entitled to a relaxation of the terms of his supervised release if he had scrupulously complied with the existing conditions of supervised release. As another court has observed in the context of an early termination of supervised release, a defendant "is not entitled to early termination simply because he has successfully

14

served a portion of his supervised release." *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005). Similarly, a defendant who merely complies with the terms of supervised release is not entitled to early termination because "ultimately [compliance] is what is expected of him." *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998). But Mr. Bischoff, however, cannot show even mere compliance with the terms of his supervised release. Therefore, the Court concludes Mr. Bischoff has not shown changed conditions justify the lifting of location monitoring or an end to home confinement.

Assuming the lower standard applies, and the Court has discretion to modify Mr. Bischoff's terms of supervised release, the Court declines to do so. The Court concludes striking location monitoring would fail to "reflect the seriousness of [Mr. Bischoff's] offense, to promote respect for the law, and to provide just punishment . . .." 18 U.S.C. § 3553(a)(2)(A).

Mr. Bischoff orchestrated a multi-million-dollar financial fraud scheme, coupled with tax evasion. He victimized twenty-six households, many of whom were his family friends. *United States v. Bischoff*, No. 1:17-cr-00196-JD (D.N.H.), *Order* at 2 (ECF No. 77). This serious crime merited considerable punishment. When Judge DiClerico decided to release Mr. Bischoff, he gave weight to statements from Mr. Bischoff's victims, which asserted that Mr. Bischoff was likely to return to his criminal ways if granted compassionate release. *Id.* at 3, 8. Judge DiClerico also noted that "[a] longer time in custody at the BOP would be preferable both from the victims' and the court's perspectives." *Id.* at 8. He stated that home confinement

15

under "strict conditions . . . to protect the public" was preferable to "outright release" because "[Mr.] Bischoff's crime and the impact on his victims weigh in favor of careful supervision." *Id.* at 9.  Judge DiClerico further pointed out that Mr. Bischoff "did defraud a large number of vulnerable people" and "[h]is suggestion in a prior motion that he should be allowed to return to work raised a concern that he did not understand the criminal nature of his activities or the serious impact his crime had on his victims." *Id.*  Thus, Judge DiClerico found home confinement subject to strict conditions of release would best protect Mr. Bischoff from COVID-19 and protect the public from Mr. Bischoff. *Id.*

Judge DiClerico's order granting Mr. Bischoff's motion for compassionate release stresses that home confinement and robust supervision are critical to protecting the public from Mr. Bischoff and ensuring he is appropriately punished for his serious fraud and tax evasion offenses.  Accordingly, the Court declines to modify the location monitoring and home confinement conditions.

Like Judge DiClerico, the Court is concerned Mr. Bischoff does not appreciate the seriousness of his offense and the importance of following instructions from his supervising probation officer.  Mr. Bischoff recently admitted willful noncompliance with the terms of his home confinement and location monitoring programs.  That is unacceptable.  Mr. Bischoff claims this noncompliance was limited to stopping for coffee, running errands for his daughter, or taking a slow drive home.  Although the conduct underlying these violations, as he described it, is not concerning, the fact that

16

they happened at all is troubling.  The Court finds it inappropriate to reward Mr.

Bischoff's misbehavior by relaxing the same conditions he violated.

## V.      CONCLUSION

The Court DISMISSES without prejudice William A. Bischoff's Motion to

Amend Special Condition of Supervision (ECF No. 2).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of May, 2021.